**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**PINE BLUFF DIVISION**

DEVERICK SCOTT                                                             PLAINTIFF
ADC #131042

v.                                   5:19-cv-00063-DPM-JJV

GIBSON, Warden,                                                           DEFENDANTS
Varner Unit, *et al*.

## PROPOSED FINDINGS AND RECOMMENDATIONS

## INSTRUCTIONS

The following recommended disposition has been sent to Chief United States Judge D.P.

Marshall Jr.  Any party may serve and file written objections to this recommendation.  Objections

should be specific and should include the factual or legal basis for the objection.  If the objection

is to a factual finding, specifically identify that finding and the evidence that supports your

objection.  An original and one copy of your objections must be received in the office of the United

States District Court Clerk no later than fourteen (14) days from the date of the findings and

recommendations.  The copy will be furnished to the opposing party.  Failure to file timely

objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or

additional evidence, and to have a hearing for this purpose before the District Judge, you must, at

the same time that you file your written objections, include the following:

1.      Why the record made before the Magistrate Judge is inadequate.

2.      Why the evidence proffered at the hearing (if such a hearing is granted) was not

offered at the hearing before the Magistrate Judge.

3.      The details of any testimony desired to be introduced at the new hearing in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the new hearing.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing.  Mail your objections and "Statement of Necessity" to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite A149
> Little Rock, AR 72201-3325

## DISPOSITION

## I.      INTRODUCTION

On February 11, 2019, Deverick Scott ("Plaintiff") sued multiple Arkansas Department of Corrections ("ADC") officials alleging violations of his rights under the First Amendment and the Religious Land Use and Institutionalized Persons Act ("RLUIPA") that allegedly occurred during his incarceration at the ADC's Varner Unit, as well as alleging retaliation.  (Doc. No. 2.) Specifically, Plaintiff, whose religion is "One God," or "G," alleged his rights were violated in three ways: (A) denial of a Ramadan meal; (B) denial of Ramadan feast; and (C) denial of religious texts.  (*Id*.)  His retaliation claim is related to the denial of religious texts.  (*Id*.)  Plaintiff seeks injunctive relief as well as damages.  (*Id*.)

Defendants have filed a Motion for Summary Judgment.  (Doc. Nos. 47-49.)  Plaintiff has responded (Doc. Nos. 50-53) and Defendants have replied (Doc. No. 57); this matter is now ripe for a decision.  After careful review, and for the following reasons, I find Defendants' Motion for Summary Judgment should be GRANTED and this case DISMISSED.

## II.　SUMMARY JUDGMENT STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record, "including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials[.]" Fed. R. Civ. P. 56(c)(1)(A).

When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party. *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002). The nonmoving party may not rely on allegations or denials, but must demonstrate the existence of specific facts that create a genuine issue for trial. *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007). The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy. *Id.* (citations omitted). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case. *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012). Disputes that are not genuine or that are about facts that are not material will not preclude summary judgment. *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

## III.　ANALYSIS

For the reasons set out below, summary judgment should be entered in Defendants' favor and Plaintiff's claims should be dismissed.

A.      **Official Capacity Damages Claims Barred by Eleventh Amendment**

Plaintiff sued Defendants in both their personal and official capacities and seeks damages, among other relief.  (Doc. No. 2 at 8-9.)    His official capacity claims for damages are barred pursuant to the doctrine of sovereign immunity.  *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (a suit against a state official in his or her official capacity is not a suit against the official but rather a suit against the official's office and, as such, is no different from a suit against the state itself, which is barred by the Eleventh Amendment unless the state has waived its immunity); *Burk v. Beene*, 948 F.2d 489, 493-94 (8th Cir. 1991) (the State of Arkansas has not waived its Eleventh Amendment immunity).   Further, Arkansas has not waived immunity for claims brought under § 1983 and RLUIPA's language does not effect a waiver of a state's sovereign immunity.  *Murphy v. Arkansas*, 127 F.3d 750, 754 (8th Cir. 1997); *Sossamon v. Texas*, 563 U.S. 277, 285-86, 293 (2011); *Van Wyhe v. Reisch*, 581 F.3d 639 (8th Cir. 2009).  Accordingly, I recommend Plaintiff's official capacity damages claims be dismissed.

B.      **Individual Capacity RLUIPA Claims**

The United States Court of Appeals for the Eighth Circuit has held that because Title IX was enacted under the Spending Clause, "Title IX will not support an action against [a school official] in her individual capacity."  *Kinman v. Omaha Pub. Sch. Dist*., 171 F.3d 607, 610-11 (8th Cir.1999).  This is the same rationale for rejecting individual liability under RLUIPA adopted by the United States Court of Appeals for the Fourth Circuit in *Rendelman v. Rouse*, 569 F.3d 182 (4th Cir. 2009) and the Seventh Circuit in *Nelson v. Miller*, 570 F.3d 868, 885-89 (7th Cir. 2009) (abrogated on other grounds *Jones v. Carter*, 915 F.3d 1147 (7th Cir. 2019)).  The Court of Appeals for the Eighth Circuit affirmed summary judgment where the district court dismissed a plaintiff's RLUIPA damages claims against ADC officials.  *Heikkila v. Kelley*, 776 Fed. Appx. 927, 928 (8th

2019) (per curiam) (*citing Haight v. Thompson*, 763 F.3d 554, 570 (6th Cir. 2014) ("Every circuit to consider the question, whether before *Sossamon* or after, has held that RLUIPA does not permit money damages against state prison officials, even when the lawsuit targets the defendants in their individual capacities.")).  Considering *Sossamon* and the above-cited cases, I find Plaintiff is not entitled to damages against Defendants in their individual capacities under RLUIPA and recommend those claims be dismissed.

### C.    Qualified Immunity

Defendants seek qualified immunity.  (Doc. No. 48 at 9-10.)  Qualified immunity protects officials who acted in an objectively reasonable manner and shields a government official from liability when his or her conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Qualified immunity is a question of law, not a question of fact.  *McClendon v. Story County Sheriff's Office*, 403 F.3d 510, 515 (8th Cir. 2005).  Thus, issues concerning qualified immunity are appropriately resolved on summary judgment.  *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (the privilege is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.").

To determine whether a defendant is entitled to qualified immunity, courts generally consider two questions:  (1) whether the facts alleged or shown, construed in the light most favorable to the plaintiff, establish a violation of a constitutional or statutory right; and (2) whether that right was so clearly established that a reasonable official would have known that his or her actions were unlawful.  *Pearson v. Callahan*, 555 U.S. 223, 232 (2009); *see also Saucier v. Katz*,

533 U.S. 194, 201 (2001).[1]  A defendant is entitled to qualified immunity only if no reasonable fact finder could answer both questions in the affirmative.  *Nelson*, 583 F.3d at 528.

> **D.     Plaintiff's Remaining Claims: Personal Capacity Damages Claims Under 42 U.S.C. § 1983 and Injunctive Relief Under § 1983 and RLUIPA**

As discussed above, Plaintiff sought damages and injunctive relief.  Plaintiff's remaining damages claim lies under 42 U.S.C. § 1983 for alleged violations of his First Amendment rights.

> **1.     First Amendment and RLUIPA Claims**

Inmates retain their First Amendment right to free exercise of religion.  *Cruz v. Beto*, 405 U.S. 319, 322 (1972).  Limitations, however, may be placed on the exercise of those rights based on the needs of the penal system. Constitutional claims that would otherwise receive strict scrutiny analysis are evaluated under a lesser standard in the context of a prison setting.  *Turner v. Safley*, 482 U.S. 78, 89-90 (1987).   Under *Turner*, a prison regulation may restrict a prisoner's constitutional rights if it is "reasonably related to legitimate penological interests."  *Turner*, 482 U.S. at 89.

*Turner* sets out four factors courts should consider when evaluating freedom of exercise claims: (1) whether there is a valid rational connection between the prison regulation and the government interest justifying it; (2) whether alternative means are available to the inmate to exercise the right; (3) whether an accommodation would have a significant ripple effect on guards, other inmates, and prison resources; and (4) whether there is an alternative that fully accommodates the prisoner at *de minimis* cost to valid penological interests.  *Id*. at 89-91.

---

[1] Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."  *Nelson v. Correctional Medical Services*, 583 F.3d 522, 528 (8th Cir. 2009) (quoting *Pearson*, 555 U.S. at 236).

In analyzing a free exercise claim, a court must "consider first the threshold issue of whether the challenged governmental action infringes upon a sincerely held religious belief and then apply the *Turner* factors to determine if the regulation restricting the religious practice is reasonably related to legitimate penological objectives." *Gladson v. Iowa Dep't. of Corrections*, 551 F.3d 825, 831-32 (8th Cir. 2009) (internal citation omitted).

Under RLUIPA, Congress established a statutory free exercise claim with a higher standard of review than that which applies to constitutional claims. The statute provides inmates with the following protection:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person-
>
> > (1) is in furtherance of a compelling governmental interest; and
> >
> > (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a)(1)-(2). Section 3 of RLUIPA protects inmate religious exercise in this manner when "the substantial burden is imposed in a program or activity that receives Federal financial assistance." *Id.* at § 2000cc-1(b)(1). RLUIPA defines "religious exercise" to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." *Id.* at § 2000cc-5(7)(A). A substantial burden

> significantly inhibit[s] or constrain[s] conduct or expression that manifests some central tenet of a person's individual religious beliefs; must meaningfully curtail a person's ability to express adherence to his or her faith; or must deny a person reasonable opportunities to engage in those activities that are fundamental to a person's religion.

*Patel v. U.S. Bureau of Prisons*, 515 F.3d 807, 813 (8th Cir. 2008).

### a.    Ramadan Meal

Plaintiff observes Ramadan as part of his religion.  He had been added to the "Ramadan list" confirming his observation of Ramadan.  (Doc. No. 51 at 12.)  Plaintiff alleges Defendants Trent Smith and Briana Boatner[1] did not provide him a Ramdan tray on May 21, 2018 "[o]ut of retaliatory, evil, discriminatory motives."  (Doc. No. 2 at 4.)

On May 21, 2018, Defendant Smith was passing out Ramadan meals to inmates near Plaintiff.  (Doc. No. 47-2 at 1-2.)  According to Defendant Smith, for unknown reasons Plaintiff's name was not on the list on May 21, 2018.  (*Id.* at 3.)  Despite Plaintiff's requests for a meal, Defendant Smith did not provide Plaintiff a Ramadan meal that day because Plaintiff's name did not appear on the list.  (*Id.* at 2-3.)  Plaintiff denies that his name was missing from the meal list that day.  (Doc. No. 49 at 3, ¶¶21, 22; Doc. No. 53 at 2, ¶¶21, 22.)  Instead, Plaintiff asserts Defendant Smith intentionally withheld Plaintiff's meal because a few days earlier Plaintiff punched Defendant Smith in the head.  (Doc. No. 53 at 2, ¶¶22; Doc. No. 51 at 66.)  In support of his position, Plaintiff included the disciplinary form on which Defendant Smith charged Plaintiff with rules violations as a result of punch.  (Doc. No. 51 at 66.)

Even if a violation of Plaintiff's rights occurred, courts that have considered whether one missed meal resulted in a substantial burden have found repeatedly that it did not.  *See, among others, Barnes v. Daviess County Detention Center*, No. 4:18-cv-P97-JHM, 2018 WL 5258628 (W.D. Ky. Oct. 22, 2018); *Blake v. Cooper*, No. 10-CV-6036-SJ-FJG, 2013 WL 523710 (W.D. Mo. Feb. 12, 2013) (denial of dates to break fast before evening prayer not substantial burden);

---

[1] The Clerk of the Court is directed to change Defendant Boatner's name on the docket to Briana Boatner.  (Doc. No. 35.)  The Clerk of the Court is further directed to substitute Defendant Boatner for Defendant Bolden, as Plaintiff originally misnamed the Defendant.  (Doc. No. 31; Doc. No. 35.)

*Maynard v. Hale*, No. 3:11-CV-1233, 2012 WL 3401095 (M.D. Tenn. Aug. 14, 2012); *Crump v. Best*, No. 10-13787, 2012 WL 1056806 (E.D. Mich. Mar. 5, 2012); *Griffith v. Hofmann*, No. 2:05-CV-126, 2008 WL 4682690 (D. Vt. Oct. 21, 2008); *but see, for example, Alamiin v. Beasley*, 2008 WL 2371869 (W.D. Ok. June 6, 2008) (summary judgment denied where plaintiff complained of being forced to accept certain food on his tray, received a disciplinary in connection with his complaints, and spent 30 days in isolation as a result). Accordingly, I find Defendants Smith and Boatner—to the extent Plaintiff stated anything more than a negligence claim against her—are entitled to qualified immunity in connection with the missed Ramadan meal on May 21, 2018.

### b.      Post-Ramadan Feast

Plaintiff alleges Defendants Seam Treas,[2] John Pollett,[3] and Dexter McDonnell[4] provided him a regular meal tray instead of a Ramadan feast tray on November 6, 2018, thereby violating his rights under the First Amendment and RLUIPA.

On November 7, 2018, Defendant McDonnell notified Deputy Warden Byers that "we were short last night on several trays from the Islamic Function." (Doc. No. 47-3 at 1.) Defendant McDonnell further requested that "the attached list of inmates receive two trays on Veterans Day." (*Id.*) Plaintiff's name was on the list because he did not get a feast tray. (*Id.* at 2.) Defendant McDonnell's request was approved. (*Id.* at 3.)

Plaintiff contests that there was a shortage of meals and instead maintains "they just skip over us . . . ." (Doc. No. 53 at 2, ¶ 29.) Regardless of why Plaintiff did not receive a feast tray,

---

[2] The Clerk of the Court is directed to change Defendant Treas's name on the docket to Seam Treas. (Doc. No. 14.)

[3] The Clerk of the Court is directed to change Defendant Pollett's name on the docket to John Pollett. (*Id.*)

[4] The Clerk of the Court is directed to change Defendant McDonnell's name on the docket to Dexter McDonnell. (*Id.*)

Plaintiff's deposition testimony establishes the omission was not a substantial burden. Plaintiff

testified that the feast is not about eating certain food. (Doc. No. 47-1 at 12.) Rather, according

to Plaintiff, "[t]he feast is just a celebration . . . . a celebration of being at peace." (*Id*.) Plaintiff

acknowledged receiving a regular tray that day, but not a feast tray. (*Id*. at 14.) He further

acknowledged that November 6, 2018, was the only instance on which he did not receive a

Ramadan feast and he has been observing Ramadan since 2006. (*Id*. at 8, 17.) Plaintiff did not

establish how, when no specific food was required or typical for the feast, the lack of a feast tray

prevented him from "a celebration of being at peace." Under these circumstances, I find no

substantial burden. Defendants Trease, Pollett, and McDonnell are entitled to qualified immunity.

### c.      Religious Texts: Failure to Exhaust Administrative Remedies

The Prison Litigation Reform Act ("PLRA") requires an inmate to exhaust available prison

administrative remedies before filing suit in federal court. *See* 42 U.S.C. § 1997e(a); *Jones v.*

*Bock*, 549 U.S. 199, 202 (2007); *Jones v. Norris*, 310 F.3d 610, 612 (8th Cir. 2002) (per curiam).

Exhaustion under the PLRA is mandatory. *Jones*, 549 U.S. at 211. "[T]o properly exhaust

administrative remedies prisoners must 'complete the administrative review process in accordance

with the applicable procedural rules,' rules that are defined not by the PLRA, but by the prison

grievance process itself." *Id.* at 218 (quoting *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)).

Compliance with a prison's grievance procedures is, therefore, all that is required by the PLRA to

properly exhaust. *Id.* Thus, the question as to whether an inmate has properly exhausted

administrative remedies will depend on the specifics of that particular prison's grievance policy.

*See id*. If a prisoner plaintiff failed to exhaust available administrative remedies before filing suit,

his complaint must be dismissed. *See* 42 U.S.C. § 1997(e)(a).

ADC Administrative Directive 14-22 governs inmates receipt of publications from recognized commercial, religious or charitable outlets.  (Doc. No. 47-6 at 1.)  Pursuant to the Directive, the Warden/Center Supervisor designates a staff to review incoming publications.  (*Id.* at 2.)  Publications may be rejected for multiple reasons.  (*Id.* at 2-3.)  Publications recommended for rejection are referred to the Warden/Center Supervisor for final decision; the Warden must approve or reject the publication within 30 days of receipt.   (*Id.* at 3.)  If the Warden rejects the publication, "the inmate must be notified, in writing, or any decision to reject and the basis for rejections of the publication.  The inmate is also notified of appeal procedures and options for disposing of the publication."  (*Id.*)  While the rejection of a publication is not a grievable matter, an inmate has the right to appeal the decision to reject a publication to the Central Office "within 10 days of the receipt of written notification of the Warden/Center Supervisor's decision to reject the publication."  (*Id.* at 4.)

Varner Unit Policy 16.1.10 set out the Unit's policies and procedures regarding inmate mail.  (Doc. No. 47-7.) Pursuant to Varner Unit policy, "[a]ny item of correspondence containing any contraband will be rejected," as well material that presents a clear and present danger to the security of the Unit.  (*Id.* at 2.)

Plaintiff ordered two texts he asserts are religious texts—*From N****s to Gods Part One* and *The Science of Self: Man, God, and the Mathematical Language of Nature*—from a third party; the two publications were shipped together in one package.[5]  (Doc. No. 47-8.)  Plaintiff alleges

---

[5] In the "Statement of Facts" section of his Complaint, Plaintiff points out that Defendant Allen and the Varner Super Max Publication Review Committee denied him several non-nude magazines. (Doc. No. 2 at 3.)  Because Plaintiff does not include mention of the magazines in the "Legal Claims" section of his Complaint, I interpret his reference to the magazines as background information in connection with his retaliation claim against Defendant Allen.

Defendant Virginia Allen[6] and the Publication Review Committee's denial violated his rights under the First Amendment and RLUIPA by denying him the books.  (*Id*. at 7.)

On July 23, 2018, Plaintiff acknowledged receiving the Publication Review Committee's decision to deny his publication From N****s To Gods Part One.  (Doc. No. 47-9.)  Plaintiff was given the option to appeal, but instead he elected to have the publication mailed to a third party. (*Id*.)  Plaintiff acknowledges he did not appeal the denial, but argues he exhausted his administrative remedies through the grievance procedure.  (Doc. No. 53 at 3-4, ¶¶54-55; Doc. No. 51 at 39-40.)  The denial, however, was not a grievable matter; rather, the applicable administrative remedy was set out in Administrative Directive 14-22.  (Doc. No. 47-6 at 4.)

Because Plaintiff did not appeal the final decision of the Publication Review Committee, he did not exhaust all available administrative remedies and his claims must be dismissed.  *See, for example*, *Pinder v. McDowell*, No. 5:14-CV-359-JM-BD, 2018 WL 2225273 (E.D. Ark. April 18, 2018) (*adopted at* 2018 WL 2223328) (E.D. Ark. May 15, 2018)); *Colten v. Hobbs*, No. 5:12-CV-263-KGB-JTK, 2014 WL 1309069 at *4 (E.D. Ark. 2014) (*citing Woodford v. Ngo*, 548 U.S. 81, 85 (2006)).  And pursuant to policy, if one publication shipped together in a package with other publications is denied, then all publications in the package are denied.  (Doc. No. 47-5 at 5; Doc. No. 47-7.)

### d.    Religious Texts: Varner Unit Policy 16.1.10

Defendants' qualified immunity argument in connection with the denial of Plaintiff's books does not address Varner Unit Policy 16.1.10 separately, but as a part of denial of both books

---

[6] The Clerk of the Court is directed to change Defendant Allen's name on the docket to Virginia Allen.

Plaintiff ordered.  Because Defendants raised qualified immunity on the issue, including Policy 16.1.10, I can fairly address the issue.

As mentioned above, Varner Unit Policy 16.1.10 set out the Unit's policies and procedures regarding inmate mail.   (Doc. No. 47-7.)  Pursuant to Varner Unit policy, "[a]ny item of correspondence containing any contraband will be rejected," as well material that presents a clear and present danger to the security of the Unit.  (*Id*. at 2.)

Plaintiff asserts Policy 16.1.10 and the denial of one book because it was packaged with another, rejected book violates his right to free exercise and access to mail, as well as his rights under RLUIPA.  (Doc. No 2 at 7.)  He also asserts his grievance regarding the book *Science of Self* was non-grievable, but he did not receive a decision from the Publication Review Committee denying the book—in other words, as I read Plaintiff's argument, there was no grievance procedure available to him.  (Doc. No. 2; Doc. No. 52 at 6, ¶6.)

Even if Plaintiff had no available administrative remedies, his challenge of Policy 16.1.10 would fail.  As mentioned above, Defendants seek qualified immunity.  The Court is not aware of any clearly established right pursuant to which Defendants would have known that denying both books in a shipment because one book was prohibited violated Plaintiff's rights.  Rather, this Court has found qualified immunity applies in connection with similar claims.  *See Jones v. Hobbs*, case no. 5:08-cv-00233-SWW, 2012 WL 1066476 (E.D. Ark. March 19, 2012); 2012 at 2012 WL 1066339 (recommendation adopted); *aff'd. Jones v. Hobbs*, No. 12-2002 (8th Cir. January 22, 2013) (*per curiam*).  Because no clearly established right existed, Defendants are entitled to qualified immunity regarding denial of The Science of Self pursuant to Policy 16.1.10.

## 2.    Retaliation

Plaintiff alleges Defendant Allen retaliated against him for using the grievance procedure by denying his books.  (Doc. No. 2 at 57.)    To succeed on a retaliation claim, a plaintiff must prove: (1) he engaged in protected activity; (2) the retaliation he suffered as a result would chill a person of ordinary firmness from engaging in that activity; and (3) retaliation was a motivating factor for the adverse action.  *Waters v. Madson*, 921 F.3d 725, 741-42 (8th Cir. 2019).

Here, Plaintiff acknowledged that the word "N****s to the average eye, you know, that would be racist."  (Doc. No. 47-1 at 28.)  Further, Plaintiff identified Defendant Allen as the Mailroom Supervisor at the Varner Supermax Unit.  (Doc. No. 2 at 57.)  During his deposition, Plaintiff testified that Defendant Allen does not make the final decision to reject a book, the Publication Review Committee does.  (Doc. No. 47-1 at 21.)  "Yeah, I'm saying she the first step of the – it's a process.  She the first step of the process in the mail room to reject the book."  (Doc. No. 47-1 at 80.)  Plaintiff was also asked:

| | |
|---|---|
| Question: | What if [Defendant Allen] doesn't know if she should reject or accept, one way or the other? |
| Plaintiff | I – I mean, it – she – she take it on her own what she feel like you – you supposed to have.  So that's her job; she the mail room supervisor. |
| Question: | Do you think she's just trying to make the best judgment call that she can? |
| Plaintiff: | Again, that – I guess – I guess – I guess you could say that. |

(Doc. No. 47-1 at 32.)

Plaintiff has the burden of proving that an "actual motivating factor for the adverse action" was retaliation.  *Griggs v. Norris*, 297 Fed. Appx. 553, 555 (8th Cir. 2008).  The record here does not support that conclusion.  Plaintiff filed an earlier grievance against Defendant Allen, but

Plaintiff admitted even the title of the denied book appears racist.   Plaintiff admits that "[p]ermitting inmates to possess publications that contain racially inflammatory materials interferes with the goals of the prevention of  violence . . . ."  (Doc. No. 49 at 8, ¶56; Doc. No. 53 at 4, ¶56.)   Further, Plaintiff's retaliation claim rests on the denial of his books.   His grievance reveals he complained that "Virginia Allen and the Varner Unit Publication Committee" retaliated against him.  (Doc. No. 51 at 39.)   His deposition testimony also reads as if Defendant Allen is a spoke in the wheel that crushed his rights.   These claims are more akin to a conspiracy claim, and Plaintiff has not come forward with any evidence that could establish a meeting of the minds. Plaintiff concedes he is "just speculating" as to why his book was denied.   (Doc. No. 47-1 at 28.) I find Plaintiff failed to meet his burden on his retaliation claim.

Rather than urge no violation occurred, Defendants argue that even assuming Defendant Allen and Defendant Gibson[7] violated Plaintiff's rights, they are entitled to qualified immunity because no right was clearly established at the time of the alleged violation.[8]  (Doc. No. 48 at 23.) If a violation did occur, I agree under the facts of this case that Defendant Allen (and Defendant Gibson to the extent Plaintiff included him in his retaliation claim) are entitled to qualified immunity.

## IV.   CONCLUSION

IT IS, THEREFORE, RECOMMENDED that:

1.      Defendants' Motion for Summary Judgment (Doc. No. 47) be GRANTED.

---

[7] The Clerk of the Court is directed to change Defendant Gibson's name on the docket to James Gibson.  (Doc. No. 14.)

[8] In support of their argument, Defendants cite *Jones v. Shabazz*, which found no RLUIPA violation by a publications committee for withholding *From N****s to Gods* on the basis that it was secular and inflammatory. Case No.: H-06-119, 2007 WL 2873042 (S.D. Tex. Sept. 28, 2007).

2.    Plaintiff's claims against Defendants be DISMISSED with prejudice.

3.    The Court certify, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal from any Order adopting these recommendations and accompanying Judgment would not be taken in good faith.

DATED this 23rd day of March 2020.

_____
JOE J. VOLPE
UNITED STATES MAGISTRSTE JUDGE